IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**MARIA P. LUJAN,**

    Plaintiff,

vs.                               Civ. No. 00-1097 LH/DJS

**LARRY G. MASSANARI, Acting Commissioner of Social Security,**[1]

    Defendant.

**MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION**[2]

1. Plaintiff invokes this Court's jurisdiction under 42 U.S.C. §405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner determined that Plaintiff is not eligible for disability insurance benefits. Plaintiff moves this Court for an order reversing the Commissioner's final decision or remanding the matter for a rehearing. The Court will review the Commissioner's

---

[1] Pursuant to Fed.R.Civ.P. 25, Larry G. Massanari, Acting Commissioner of Social Security is substituted for William A. Halter, Acting Commissioner, as the Defendant in this action. Mr. Massanari was designated by President Bush on March 29, 2001.

[2] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. Section 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections with the clerk of the district court within the ten day period allowed if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner applied correct legal standards in making his findings. <u>Williams v. Bowen</u>, 844 F.2d 748 (10th Cir. 1988).

**Administrative History**

2.   Plaintiff applied for supplemental security income on February 11, 1998. Tr. 48-50. Prior to this, Plaintiff had filed an application for supplemental security income on September 29, 1997, which was subsequently denied. Tr. 24, 27-30, 45-47. No request for reconsideration or hearing was filed with the agency, nor was any request for review filed with the United States District Court. Tr. 11. After reviewing the evidence and hearing testimony on the February 1998 application, the Administrative Law Judge (ALJ) decided the case on August 11, 1999. Based upon the evidence presented at the hearing, the ALJ determined that Plaintiff was not disabled. Tr. 11-21. Determining that the Plaintiff could perform her past relevant work, the ALJ decided this case at step four. Tr. 19-21. The Appeals Council denied Plaintiff's request for review on June 30, 2000. Tr. 5-6. The decision of the ALJ therefore became the final decision of the Commissioner for judicial review purposes.

**Statement of the Facts**

3.   Plaintiff alleges a disability due to pain in her lower extremities. Tr. 56. Plaintiff was born on April 18, 1938 and was

61 years old at the time of the hearing in July of 1999.  Tr. 48-50, 259.  Plaintiff did not attend school and speaks very little English. Tr. 117, 258-259.  Her past relevant work experience is as a janitor and child care provider.  Tr. 60-61.

**Issues**

4.  Plaintiff alleges the ALJ erred in: (1) disregarding the opinion of the treating physician; (2) determining that the Plaintiff could perform light duty work; (3) in finding that the Plaintiff could return to her past relevant work; and (4) in failing to reopen Plaintiff's prior claim.

**The Standard of Review**

5.  The function of this Court on review is not to try the Plaintiff's claim *de novo*, but to determine upon the whole record whether the Commissioner's decision is supported by substantial evidence.  Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is more than a scintilla but less than a preponderance of the evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion.  Id.  It is well settled that if there is substantial evidence to support the Commissioner's decision then that decision must be upheld.  However, the district court should not blindly affirm the Commissioner's decision but must instead scrutinize the entire record to determine if the Plaintiff's claim

is supported by substantial evidence and the law has been correctly applied. Hogan v. Schweiker, 532 F.Supp. 639, 642 (D.Colo. 1982).

6. The Plaintiff must first make a *prima facie* showing of an impairment which effectively precludes her from returning to her past work. Once that showing is made, the burden shifts to the Commissioner to show: (1) that the Plaintiff, considering her age, education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific types of jobs exist in significant numbers in the economy. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); Salas v. Califano, 612 F.2d 480, 482-83 (10th Cir. 1979); Gardner v. Brian, 369 F.2d 443, 446-47 (10th Cir. 1966).

7. To regularize the adjudicative process, the Social Security Administration promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §404.1520. At the first three levels of the sequential evaluation process, the claimant must show: (1) that she is not engaged in substantial gainful employment; (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and (3) that her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant cannot show that she has met or equaled a listing, she must show at step four that she is unable to

perform work she had done in the past.  At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering her age, education, and prior work experience.  If a determination of disabled or not disabled is found at any step, further inquiry is not required.  20 C.F.R. §404.1520.

8.   Upon reaching the fifth step of the sequential evaluation process, the Medical-Vocational Guidelines (grids) are used in determining whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.  These grids reflect the existence of jobs in the national economy at various residual functional levels by incorporating administrative notice of some occupational publications and studies.  20 C.F.R. §404.1566(d).  This aids the Commissioner in determining what specific job types exist in the national economy for the claimant.  To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity.   20 C.F.R. §§404.1545, 404.1563-.1565.  These findings of fact are factored into the grids to produce a factual conclusion of disabled or not disabled.  20 C.F.R. §404.1569.  The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment.  20 C.F.R. Part 404, Subpt. P, App. 2, §200.00(e)(2).

9.   Where a claimant presents evidence of both exertional and nonexertional impairments (such as pain, inability to maintain concentration, and substance abuse), the grids are not conclusive

but merely form a framework for disability determination. Id. In that situation, the ALJ must make findings on how much a claimant's work ability is further diminished by the nonexertional limitations. Id. If the claimant's nonexertional limitations are significant enough to reduce further his or her work capacity, the ALJ may not rely upon the grids but instead must give full consideration to all relevant facts, including vocational expert testimony if necessary, in determining whether the claimant is disabled. Id.; Channel v. Heckler, 747 F.2d 577, 583 (10th Cir. 1984). However, the mere presence of nonexertional impairments does not automatically preclude reliance on the grids. Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989); Gossett v. Bowen, 862 F.2d 802, 807-08 (10th Cir. 1988); Channel, 747 F.2d at 582 n. 6.

**Discussion**

10.   The ALJ found that the finding that the Plaintiff was not disabled under the application dated September 29, 1997 was *res judicata* and that the new evidence did not warrant a reopening of the application. Tr. 11-12. A Commissioner's decision not to reopen a previously adjudicated claim for benefits is discretionary and not a final decision reviewable under 42 U.S.C. Sec. 405(g). See Califano v. Sanders, 430 U.S. 99, 107-109 (1997). Further, only a colorable constitutional claim provides a district court with jurisdiction to review this decision. Id. Thus, the Court does not have jurisdiction to review the ALJ's decision not a

reopen an earlier application.

11.   Plaintiff failed to carry her burden in establishing that she has a disabling impairment.  To qualify for benefits Plaintiff must demonstrate, in accordance with the relevant portion of Section 223(d) of the Act, 42 U.S.C. Sec. 423(d), that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for at least 12 months.  42 U.S.C. Sec. 416(a)(10).  The Act defines a physical or mental impairment as one "that results from anatomical, physiological or psychological abnormalities which are demonstrated by medically acceptable clinical or laboratory diagnostic techniques."   42 U.S.C. Sec. 423(d)(3).  The Commissioner's regulations require claimants to support their allegations through medically acceptable clinical and diagnostic techniques.  20 C.F.R. Sec. 404.1513.

12.   A review of the objective medical evidence does not support a finding of a disabling physical impairment.  A magnetic resonance imaging (MRI) of the lumbar spine was performed on December 9, 1997.  It showed only slight disc disease, with no evidence of spinal stenosis.  Tr. 102, 118.  In reviewing the MRI, an agency physician noted "[n]othing especially significant on MRI...no encroachment or any foramina."  Tr. 94.  An x-ray was performed on Plaintiff's right tibia fibula which was normal.  Tr. 158.  An x-ray of Plaintiff's right hip and pelvis showed "bursitis

versus localized myositis ossificans." Tr. 163. Through her examinations her physicians noted that her lower extremities were within normal limits with regard to range of motion, circulatory and sensory function. Tr. 102, 107, 132, 153, and 159-160. Further, the medical evidence demonstrated that Plaintiff's pain is managed with medication and exercise. In August of 1996, Dr. Ralph E. Trujillo, one of Plaintiff's treating physicians noted that her tibial pain was 80% resolved and that the Plaintiff was contemplating returning to work. Tr. 151.

13. Further, Plaintiff's subjective testimony supports the ALJ's decision. In his decision the ALJ noted that he had observed that Plaintiff ambulated normally at the hearing despite her assertions. The Plaintiff could cook, clean and shop. She took daily walks and cared for her personal needs. Tr. 19. In June of 1997 she told her physician that she could walk one mile. Tr. 107. Socially, she would visit with relatives. Tr. 56-61.

14. The ALJ correctly rejected Dr. Nelson's opinion as stated in the Physical Residual Functional Capacity (RFC) Questionnaire of July 15, 1999. Tr. 207-211. Dr. Nelson opined that Plaintiff was unable to work and noted significant limitations. The limitations indicated are not supported by Dr. Nelson's records. The record does not contain any evidence of peripheral neuropathy other than one brief line in one medical record. The record demonstrates that Plaintiff has been diagnosed with bursitis, shin splints and slight degenerative disc disease. Tr. 102, 117-8, 122, 141, 157,

159-160, 163-64, 212, 214 and 228.  Dr. Nelson found that on May 9, 1997, Plaintiff had full range of motion and normal deep tendon reflexes in her lower extremities.  Tr. 132.  He consistently found this in his later examinations.  Tr. 132, 153 and 159-160.  The record not contain any evidence of spinal stenosis.  Rather, the December 1997 MRI specifically ruled out spinal stenosis.  Tr. 102, 118.  There are no records on the evaluation or any records to support Dr. Nelson's conclusion.   The ALJ correctly gave little weight to his opinion.  It is brief, conclusory and unsupported by the medical evidence. Castellano v. Secretary of HHS, 26 F.3d 1027, 1029 (10th Cir. 1994).

    15.   Agency physicians also reviewed Plaintiff's medical records.  Dr. Nancy Nickerson noted on October 11, 1997 that the only diagnosis for Plaintiff was shin splints and that her physical exam was unremarkable.  She further noted that a finding of non-severe impairment would not be unreasonable. Tr. 66.  On April 1, 1998, another agency physician, Dr. Donald B. Stewart noted that there was nothing "especially significant" on Plaintiff's MRI.  Tr. 94.  Additionally, on May 14, 1998, Dr. Melvin Golish, noted that the MIR was not significant.  Tr. 93.

    16.   Plaintiff argues that she proved she is unable to perform her past relevant work because of her testimony and the recorded provided by Dr. Nelson.  As discussed above, the ALJ properly rejected Dr. Nelson's opinion.  Further, as discussed above, her testimony does not support a finding of a disabling

impairment. The ALJ correctly applied the law in finding that she can perform her past relevant work as a child care provider. <u>Henrie v. United States Department of Health & Human Services</u>, 13 F.3d 359, 360 (10th Cir. 1993). He specifically evaluated Plaintiff's physical and mental RFC. Tr. 20. The ALJ found that the child care provider job was categorized within the Plaintiff's current educational and psychological ability, specifically finding that Plaintiff had the reasoning, mathematical and language ability to perform the work. Finally, the ALJ compared the demands of work as a child care provider with the Plaintiff's RFC and determined that she was able to perform such work. Tr. 15.

17.   Finally, Plaintiff argues that according to the grids she is disabled. The grids apply at step five when an impairment alleged prevents the performance of Plaintiff's past relevant work. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 2 Sec. 200 (2000). The ALJ decided this matter at step four. The ALJ specifically found that the Plaintiff was not disabled because she can perform her past relevant work as a child care provider. Tr. 21. Thus, failure to apply the grids provides no basis for error in this case.

**Recommended Disposition**

For these reasons, I recommend that Plaintiff's Motion to Remand be denied.

_____
Don J. Svet
United States Magistrate Judge